UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF GEORGIA

SAVANNAH DIVISION

|  |  |  |
|---|---|---|
| JANET K. HIGGINS, | ) | |
|  | ) | |
| Plaintiff, | ) | |
|  | ) | |
| v. | ) | CV417-257 |
|  | ) | |
| THE CITY OF SAVANNAH, | ) | |
| GEORGIA; *et al.*, | ) | |
|  | ) | |
| Defendants. | ) | |

FILED
Scott L. Poff, Clerk
United States District Court
By James Burrell at 3:07 pm, Feb 08, 2018

# ORDER

*Pro se* plaintiff Janet Higgins fell and was injured while crossing River Street in Savannah, Georgia. Doc. 1-2 at 12, ¶ 12. She contends that the City of Savannah and various individual defendants are responsible for her injury. *See* doc. 1-2 at 10-33 (Complaint). She seeks to recover medical expenses and compensation for pain and suffering, for a total compensatory award of not less than $500,000, as well as punitive damages and costs. *Id.* at 32. Defendants removed the action to this Court. *See* doc. 1 (Notice of Removal). Plaintiff now seeks remand to the state court. Doc. 5. Her request to supplement that motion (doc. 12) is **GRANTED**. Defendants oppose remand. Doc. 15. They also seek

1

additional time to respond to plaintiff's amendment to her remand motion. Doc. 15. That request is **GRANTED**, subject to the additional requirement that the defendants address the issues discussed below (which are raised, but not fully developed in their response brief).

Defendants removed this case from the Superior Court of Chatham County, Georgia. *See* doc. 1 (Notice of Removal). They assert that removal is proper pursuant to 28 U.S.C. § 1441 and 28 U.S.C. § 1332. *Id.* at 3-4, ¶ 9. As with questions concerning the Court's subject matter jurisdiction generally, "there is a presumption against the exercise of federal jurisdiction, such that all uncertainties as to removal jurisdiction are resolved in favor of remand." *Russel Corp. v. Am. Home Assurance Co.*, 264 F.3d 1040, 1050 (11th Cir. 2001) (cite omitted).

Defendants assert that this Court has original jurisdiction based on the parties' diversity of citizenship. *See* doc. 1 at 3-4, ¶ 9. Assuming that defendants correctly assert the bases for diversity jurisdiction -- complete diversity of citizenship between the parties and an amount in controversy in excess of the statutory threshold, *see* 28 U.S.C. § 1332(a) -- removal is still questionable. Section 1441 explicitly precludes removal based on diversity jurisdiction "if any of the parties in interest properly

joined and served as defendants is a citizen of the State in which such action is brought," a provision commonly referred to as the "forum defendant rule." 28 U.S.C. § 1441(b)(2); *see Stillwell v. Allstate Ins. Co.*, 663 F.3d 1329, 1332 (11th Cir. 2011) ("When a case is removed based on diversity jurisdiction, as this case was, it must be remanded to state court if . . . [even] one of the defendants is a citizen of the state in which the suit is filed, [cit.]." (citation omitted)); *see also, e.g.,* CHARLES ALAN WRIGHT, ARTHUR MILLER, *et al.*, 14B FED. PRAC. & PROC. JURIS. § 3723 (4th ed. 2017) ("Section 1441(b) explicitly provides, and the cases uniformly hold, that diversity cases may be removed to federal court only if none of the parties in interest properly joined and served as a defendant is a citizen of the state in which the action was brought."). Defendants' notice of removal explicitly alleges that they are *all* "citizens of Georgia" and that this action was brought in Georgia. Doc. 1 at 1, ¶1; 4, ¶ 9; *see also* doc. 14 at 1 (noting that defendants' Georgia citizenship is "a fact which is not in dispute.").

Defendants advance a rather subtle argument to support removal, even given the undisputed facts. They contend that no defendant has been properly served. Doc. 14 at 5-7. Consequently, they reason, §

3

1441(b)'s prohibition on removal by "any of the parties in interest properly joined *and served* as defendants" who are citizens of the state where the action was filed, does not apply. *Id.* at 5. They contend that the "plain meaning" of § 1441 requires this rather extraordinary result and that this action -- which they implicitly concede could not have been removed if even one defendant were properly served -- *can* be removed because of variously defective service. *Id.* at 5 (arguing that defendants were not served when removal was noticed); *id.* at 6-7 (arguing that service on all the defendants is defective for various reasons). The Court is not convinced that the interests underlying the forum defendant rule can be so easily displaced.

Defendants cite to an unpublished case from the Middle District of Alabama in support of the proposition that a forum defendant (*i.e.*, one who is "a citizen of the state in which such action is brought," 28 U.S.C. § 1441) who is not properly served may nevertheless remove a case, avoiding the forum defendant rule. Doc. 14 at 5 (citing *Seong Ho Hwang v. Gladden*, 2016 WL 9334726 (M.D. Ala. Dec. 12, 2016)). This Court, however, inclines more toward the well-reasoned and contrary opinion of the Northern District of Georgia. *See generally Hawkins v. Cottrell, Inc.*,

4

785 F. Supp. 2d 1361 (N.D. Ga. 2011) (concluding, after careful textual analysis, that "allowing an unserved forum defendant to remove a diversity action clearly defeats the purpose of the forum defendant rule because it enables a resident defendant, who would not be subject to presumptive local prejudice in the state courts, to obtain a federal forum. This totally eviscerates the forum defendant rule and leads to an absurd result, because it undermines the rationale for having a forum defendant rule at all.").

The *Hawkins* court concluded that removal is always improper unless at least one defendant is properly served. *See Hawkins*, 785 F. Supp. 2d at 1369. There, as here, there was no dispute concerning the citizenship of the un-served defendant. *See id.* at 1364. The Court thus explained the dilemma:

> If [any] defendant had been served, then there would have been at least one party in interest that was joined and served, and the court would then proceed to ask whether 'none' of the parties in interest were residents of the state where the suit was brought. At this point, the forum defendant rule would be applied to bar removal by defendant, because defendant is a resident of the state where the suit was brought.

*Id.* at 1369 n. 12. Avoiding the kind of *Through-the-Looking-Glass* procedural paradoxes that result from a non-party effecting removal and

5

litigating, all the while maintaining that he is not properly served, is one of the principal virtues of the *Hawkins* approach. *See* n. 3 *infra*.

*Hawkins* finds further support for its conclusion (that removal is improper unless at least one party is effectively served) in the Supreme Court's analysis of the timing provisions in 28 U.S.C. § 1446. *See Hawkins*, 785 F. Supp. 2d at 1370 (discussing *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344 (1999)). The Supreme Court held that the thirty-day period within which notice of removal must be filed does not start until *both* service of the summons *and* receipt of the complaint upon the defendant.[1] *Id.* (citing *Murphy Bros.*, 526 U.S. at 348, 356). Although *Hawkins* concedes that the Supreme Court has not determined that service was required before removal, the fact that the

---

[1] *Murphy* contended with the tortuous phrasing of § 1446(b), which requires a defendant to file his notice of removal "within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within 30 days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter." 28 U.S.C. § 1446(b)(1). The Supreme Court explained that traditional notions of service of process and the statutory text implied that the period for removal extended no less than thirty days from the date of service of the summons, and might extend for thirty days, if the summons were served without an attached complaint, from the date the complaint is received. *See Murphy Bros., Inc.*, 526 U.S. at 354. The reference in the statute to receipt "through service or otherwise" did not vitiate the traditional requirement of service of process, but merely recognized that *complaints* might be transmitted to a defendant by service (*i.e.*, contemporaneous with service of the summons) or "otherwise," (*i.e.*, electronically or physically separate from the summons). *See id.* at 353-54.

time for removal does not begin to run until after service has been effected suggests that service is at least a necessary (if not a sufficient) condition for removal. *Id.* The *Hawkins* court also points out that, if service were not a precondition to removal, § 1446's deadline is superfluous; "[i]f removal can be effected prior to service, it makes no sense for the removal deadline to begin to run after service of process." *Id.*

The *Hawkins* court finally explains that Georgia law provides additional support for the conclusion that there can be no removal without effective service on at least one defendant. Section 1441 contemplates removal "to the district court of the United States for the district and division embracing the place where such action *is pending*." 28 U.S.C. § 1441(a). Whether an action is "pending" before a state court is a matter of state law. *Hawkins*, 785 F. Supp. 2d at 1371. Georgia law historically recognizes a distinction between the "commencement of an action" and the existence of a "suit pending between the parties," and that distinction is preserved under the modern Civil Practice Act. *Hawkins*, 785 F. Supp. 2d at 1371 (quoting *McClendon v. Hernando Phosphate Co.*, 100 Ga. 219, 28 S.E. 2d 152, 153 (1897) (historical

7

distinction); *Franek v. Ray*, 239 Ga. 282, 236 S.E.2d 629, 632 (1977) (modern distinction)). That distinction implies that, under Georgia law, a filed action "'is not a 'pending' suit until after service of process is perfected.'" *Hawkins*, 785 F. Supp. 2d at 1371-72 (quoting *Steve A Martin Agency, Inc. v. PlantersFIRST Corp.*, 297 Ga. App. 780, 678 S.E.2d 186, 188 (2009) (citing *Jenkins v. Crea*, 289 Ga. App. 174, 656 S.E.2d 849, 850 (2008) ("An action is not a pending suit until service is perfected."))).

The *Hawkins* court, therefore, provides strong conceptual support for the conclusion that removal prior to *any* defendant being served is not proper. This conceptual support is in addition to the *Hawkins* court's persuasive discussion of the history of diversity jurisdiction and removal. *See Hawkins*, 785 F. Supp. 2d at 1373-1378 (discussing "the fear that state courts would potentially exhibit local prejudice towards defendants who were citizens of a different state," as the underlying rationale of diversity jurisdiction and removal predicated upon it). The cumulative force of the *Hawkins* court's reasoning seems to overwhelm the strictly logical inference that underlies defendants' position here. *See* doc. 14 at 5 ("Giving the [forum defendant] rule its plain meaning,

the converse of the rule should also be true."); *see also* OLIVER WENDELL HOLMES, JR., THE COMMON LAW (1881) ("The life of the law has not been logic: it has been experience."); Ralph Waldo Emerson, *Self-Reliance*, EMERSON'S ESSAYS 45, 57 (Houghton, Mifflin & Co. 1980) ("A foolish consistency is the hobgoblin of little minds . . . .").

However, even if the Court were to accept the *possibility* of removal before effective service, it would then confront the City's argument that it has not, in fact, been properly served. The Court is all too familiar with the City's argument here. *See, e.g., Willis v. Mayor and Alderman of the City of Savannah*, 770 F. Supp. 2d 1349, 1350 (S.D. Ga. 2011); *Kicklighter v. City of Savannah*, CV402-199, doc. 14 at 3 (S.D. Ga. Sept. 25 2002); *Smith v. City of Savannah*, CV404-134, doc. 5 at 1; doc. 12 (S.D. Ga. Nov. 30, 2004).[2] It contends that by naming only "The City of

---

[2] The Court also remembers cases in which the City has ignored the exact misnomer it seeks to capitalize on here. *See Croslen v. City of Savannah, Georgia*, CV414-143, doc. 3 (Summons directed to "City of Savannah, c/o Mayor Edna Branch Jackson, 2 East Bay Street, Savannah, Ga., 31402."), doc. 5 at 1-3 (noting that the City was "misidentified in the Complaint as the 'City of Savannah, Georgia,'" but asserting no service- or process-related defense), 4, ¶ 5 (admitting the City was "properly served with the Complaint and Summons."). Obviously waiving a defense in one case does not require waiving it in every case, but, given the substance (or lack of it) of the defense at issue, the Court has suggested that waiver may be a more appropriate choice. *Willis*, 770 F. Supp. 2d at 1351 n.3 (suggesting "the City's counsel should reconsider the . . . drain on judicial resources exacted by what is, at bottom, a paper-churning, taxpayer-dollar-wasting defense.").

Savannah, Georgia," and not "The Mayor and Aldermen of the City of Savannah," service upon the City has not been perfected.[3] Doc. 14 at 6. As this Court has pointed out before, "[t]he City [of Savannah], which has never shown legal prejudice from not being called by its formal name was told [more than] a *quarter century* ago that its 'wrong-name' dog won't hunt . . . ." *Willis v. Mayor & Alderman of the City of Savannah*, 770 F. Supp. 2d 1349, 1350 (S.D. Ga. 2011). Georgia law continues to support that conclusion.[4] *See, e.g,* O.C.G.A. § 9-11-4(i) ("At any time in its discretion and upon such terms as it deems just, the court may allow

---

[3] Despite contending that service has not been perfected, defendants seem prepared (if not anxious) to commence discovery. *See* doc. 10 (Fed. R. Civ. P. 26(f) Report contemplating commencement of discovery and requesting that the Court limit its scope); doc. 11 (requesting court intervention, among other reasons, "so that the case will not be protracted"). It is axiomatic that a party is not properly before the court before that party has been served with process. *See, e.g., Murphy Bros., Inc.*, 526 U.S. at 350 ("[O]ne becomes a party officially, and is required to take action in that capacity, *only* upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." (emphasis added)). Defendants contend they are before the Court to the extent necessary to remove the action and oppose remand, and even to the extent that they seek its intervention in discovery, but they still "reserve" their process- and service-related defenses. The Court struggles to see why defendants should get to have it both ways: in the case when it suits them, and out when it doesn't.

[4] Defendants correctly point out that the effectiveness of service prior to removal is determined by the laws of the state from which the action was removed, in this case Georgia. *See* doc. 14 at 5 (citing *Rentz v. Swift Transp. Co., Inc.*, 185 F.R.D. 693 (1998)); *see also Orton v. Mathews*, 572 F. App'x 830, 833 (11th Cir. 2014) (citing *Usatorres v. Marina Mercante Nicaraguenses, S.A.*, 768 F.2d 1285, 1286 n.1 (11th Cir. 1985)) ("When a federal court is considering the sufficiency of process after removal, it does so by looking to the state law governing process.").

any process or proof of service thereof to be amended, unless it clearly appears that material prejudice would result to the substantial rights of the party against whom the process is issued."); RICHARD C. RUSKELL, GA. PRAC. & PROC. § 8.9 (2017-2018 ed.) ("Where there is a misnomer of a defendant corporation in the complaint and summons, but the name set forth therein is such as to mislead nobody, such pleadings and summons are amendable to show the correct name."). As the Georgia Court of appeals has explained (and as defense counsel would do well to remember):

> "[a] suit at law is not a children's game, but a serious effort on the part of adult human beings to administer justice; and the purpose of process is to bring parties into court. If it names them in such terms that every intelligent person understands who is meant, it has fulfilled its purpose; and courts should not put themselves in the position of failing to recognize what is apparent to everyone else. As a general rule the misnomer of a corporation in a notice, summons, notice by publication, garnishment action, writ of certiorari, or other step in a judicial proceeding is immaterial if it appears that it could not have been, or was not, misled . . . . Georgia cases . . . follow [ ] this rationale and do *not* hold that the existence of a mere misnomer authorizes one freely to ignore the fact that he has been served with legal process."

*Mathis v. BellSouth Telecomms., Inc.*, 301 Ga. App. 881, 884 690 S.E.2d 210 (2010) (quoting *Sam's Wholesale Club v. Riley*, 241 Ga. App. 693, 696, 527 S.E.2d 293 (1999)) (alterations and emphasis in original); *see*

*also AAA Restoration Co., Inc. v. Peek*, 333 Ga. App. 152, 154 n. 1, 775 S.E.2d 627 (2015) (describing *Mathis* and other cases as "holding that a corporate misnomer in a complaint will not invalidate service of process where service was in fact made on the real party-defendant."). There is no contention that the City was misled by plaintiff's nomenclature. *See* doc. 1-2 at 9 (memorandum to an Assistant City Attorney, forwarding notice of suit "Civil Action Number SPCV12-01109-MO Janet K. Higgins, Plaintiff v. Mayor and Aldermen of the City of Savannah, Defendants.").

The Court **GRANTS** plaintiff's request to amend her remand motion (doc. 12), and defendants' request for additional time to respond (doc. 15). Further, the Court will extend their response time by seven days, rather than the five they request, to allow them to fully address the Court's concerns discussed above. In the interest of fairness, the Court will also proactively afford plaintiff seven days from the date of any response to file her reply. Defendants remain free to withdraw their opposition to remand and proceed to address plaintiff's allegations in Chatham County Superior Court. If defendants intend to withdraw their opposition to remand, they shall so notify the Court within the extended

deadline for their response. In the interest of efficiency, the Court will take up the remaining motions (doc. 8, doc. 9, doc. 11) only after resolving the question of remand.

In response to defendants' request for an extension, Higgins has requested that the Court strike their response and impose sanctions, or criminal charges, against defense counsel. Doc. 16. She, correctly it appears, points out that defendants' response was not timely filed. Under the Court's Local Rules, a party has 14 days to oppose a motion. *See* S.D. Ga. L. Civ. R. 7.5. Plaintiff filed her motion to remand on January 22, 2018 (doc. 5) and 14 days from that date was February 5, 2018. The Court's docketing software, however, recorded defense counsel's brief as filed at 12:04 a.m. on February 6, 2018. *See* doc. 14. Later that day, defendants requested the extension to respond to plaintiff's requested amendment. Doc. 15. While Higgins is correct that defendants' opposition is *technically* out of time, the Court does not ordinarily concern itself with such trivial deviations. *See* S.D. Ga. L. Civ. R. 1.1 (requiring Local Rules "be read consistently" with the Federal Rules); Fed. R. Civ. P. 1 (admonishing application of the Federal Rules

13

"to secure the just, speedy, and inexpensive determination of every action and proceeding.").

Above, the Court admonished defense counsel to remember that these proceedings are not a game. Plaintiff apparently needs a similar reminder. The Court appreciates that this action must be a source of emotional tension for plaintiff. In such situations, everyone is subject to hyperbole. However, litigation is not an exercise in catching one's opponent in some technical misstep to secure advantage. It is a search for truth and justice. The procedural rules should facilitate that search, not impede it. This Court will not abide *any* party or counsel's attempt to reduce its procedures to a game of "Gotcha!"

Despite the Court's impression that plaintiff's allegations that defense counsel "filed a FALSE and Fraudulent document," doc. 16 at 2, are primarily an expression of her frustration, it takes any allegation of misconduct by members of its bar *very* seriously. Having explained the seriousness of every aspect of this proceeding, and (hopefully) satisfying plaintiff by the extended analysis above that the Court is vigilant in scrutinizing *all* the arguments the parties advance, the Court will give her an opportunity to reconsider her allegations.

If plaintiff wishes to press her misconduct claims against defense counsel, she may do so within the extended time provided above. If she does so, however, she must make clear not only what defense counsel did, but how it harmed her. Mere typographical errors or minor errors in the date on filings -- which have *not* resulted in any demonstrable harm to plaintiff -- are not enough. *See* doc. 16 at 3. If she wishes to pursue her claims, she should follow the procedure imposed by Fed. R. Civ. P. 11, including the provisions of Rule 11(c)(2) (imposing specific procedural requirements).

Accordingly, plaintiff's motion to "exclude" defendants' response opposing her motion is **DENIED**. Doc. 16. Her request that criminal charges be filed based on the alleged conduct is frivolous.[5]

---

[5] Even assuming that the facts alleged supported a criminal charge (and they don't appear to) private citizens simply cannot initiate criminal proceedings. *See, e.g., Lopez v. Robinson,* 914 F.2d 486, 494 (4th Cir. 1990) ("No citizen has an enforceable right to institute a criminal prosecution." (citing *Linda R. v. Richard V.*, 410 U.S. 614, 619 (1973) ("In American jurisprudence at least, a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another.")); *Cok v. Cosentino*, 876 F.2d 1, 2 (1st Cir. 1989) ("[A] private citizen has no authority to initiate a federal criminal prosecution."). The Court is also without authority to order the United States Attorney to initiate a prosecution. *See Inmates of Attica Corr. Facility v. Rockefeller*, 477 F.2d 375, 379 (2nd Cir. 1973) (citations omitted) ("federal courts have traditionally and, to our knowledge, uniformly refrained from overturning, at the insistence of a private person, discretionary decisions of federal prosecuting authorities not to prosecute persons regarding whom a complaint of criminal conduct is made[,] . . . even in cases . . .where . . . serious questions are raised as to the protection of the civil rights and physical security of a definable class

**SO ORDERD,** this <u>8th</u> day of February, 2018.

*/s/ G.R. Smith*
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

---

of victims of crime and as to the fair administration of the criminal justice system."). Such orders would violate the Constitution's separation of powers between the Executive and Judicial Branches. *See id*. at 379-80 (quotes and cite omitted) (the United States Attorney, although a member of the bar and an officer of the court, "is nevertheless an executive official of the Government, and it is as an officer of the executive department that he exercises a discretion as to whether or not there shall be a prosecution in a particular case."). The Court has discretion to refer perjury allegations to the United States Attorney for prosecution, but sees no reason to do so here.